MILLER, Judge.
Plaintiffs Buford and Mateline Dauzat appeal the judgment dismissing their claims against defendant Kroger Company and its insurer defendant North American Insurance Company of North America for damages resulting when cans in a display fell on Mrs. Dauzat. We affirm.
At about 2 p. m. on Tuesday August 13, 1974, a day of small traffic count in Kroger’s, two twenty-four can cartons of 12 oz. Canada Dry soft drinks fell from a display in the front portion of Kroger’s store. The cans were not bound together to make six or twelve packs. The cans were in trays or cut down cartons, and the cans separated as they fell rather than falling as a bound carton.
There is evidence to support the trial court’s finding that the Canada Dry soft drink display was made up of three rows of cartons or trays, each row being one tray deep and some twenty to thirty feet in width. These three rows of cardboard trays were along the outside wall of the store near to but separated from the checkout registers by a 11 foot aisle. The row nearest the wall was undisturbed and perfectly stacked to a height of six or seven feet both before and after the accident. The middle row was undisturbed and perfectly stacked to a height of six feet before and after the accident. And the front *172 row, the one nearest the checkout registers, was neatly and properly stacked to a height of five feet before the accident. After the accident, only the 48 cans from the two trays which had fallen were out of order. The remainder of the display was in perfect order.
The trial court specifically rejected the testimony of Mrs. Dauzat and her two daughters that the cartons were stacked to the ceiling some fifteen feet high, and the testimony of Mrs. Dauzat’s daughters that the display was crooked and in disarray prior to the accident. We fail to find manifest error in these determinations.
Mrs. Dauzat explained she had completed her shopping and had checked out at the register. Because it was raining, she and her children stood between the register and the Canada Dry display to wait for the rain to slacken or stop. By deposition she testified all four of her children were near her, but this was changed at trial to state her two daughters were near, but her two boys were outside the store at the time of the accident. According to Mrs. Dauzat she was standing some five or six feet from the display when without warning she was struck on the right side of the top of her head, on her right shoulder and right arm by several cans some of which ended up in her shopping cart. When she gave the history of the accident to her physicians, she stated that five or six cartons of drinks hit her.
Immediately after the accident, the bag boy responsible for maintaining the Canada Dry display asked Mrs. Dauzat if she was hurt or needed assistance. At about that same time, the assistant manager made similar inquiries and asked if he could send her to a doctor. Mrs. Dauzat stated to both she was all right. Shortly thereafter she rolled her cart to her car. Her children loaded the groceries in her car and Mrs. Dauzat drove home. Later that day she became nauseated and because of pain she went to the hospital emergency room and was treated. She attempted to see her physician but he was not available. She was treated by her physician on the next day and incurred substantial medical expenses.
The accident occurred while Mrs. Dau-zat was on vacation. When her vacation ended the following Monday, she reported to her employment although her physician had suggested she rest rather than return to work. She did not miss work as a result of her injuries. Mrs. Dauzat testified her family’s financial condition would not permit her to follow her physician’s advice.
Although Mrs. Dauzat and her daughters vigorously denied they might have touched the display, the trial judge suggested that as one of several possibilities. He properly concluded Mrs. Dauzat was closer to the display than the five to six feet distance she consistently stated. This was established because the drinks in the first row were the only ones disturbed and they had not been stacked higher than five feet. Although the record does not give Mrs. Dauzat’s height, the trial court noted she was short.
There is substantial evidence to support the trial court’s conclusion that Kroger had more than adequate rules and regulations regarding inspection and safety procedures and these rules and regulations were carried out. The display was restacked every evening. The co-manager inspected all displays three to four times each morning and three to four times each afternoon. The bag boy working near the display frequently checked the display and helped customers who had difficulty getting cans from the display. Additionally, the floor was swept periodically during the day, and displays were rearranged during that operation when disarray was discovered. There is no manifest error in the trial court’s finding Kroger’s inspection procedures were sufficient and were carried out.
After the trial judge decided this case, Kavlich v. Kramer, 315 So.2d 282 *173 (La.1975) was handed down. This decision specifically finds an inference of negligence on the part of the storekeeper by testimony establishing patron’s freedom from negligence and causation. Therefore the trial court improperly rejected the res ipsa loquitur rule. However, this does not affect the trial court’s decision because the inference may be and was here rebutted by evidence establishing the storekeeper’s reasonable inspection procedures. Kavlich v. Kramer, 303 So.2d 874 (La.App. 1 Cir. 1974). Mancuso was reversed on other grounds. Mancuso held evidence of reasonable inspection shifted the burden to the patron to show actual negligence. In reversing, the supreme court held the patron carried that burden. The evidence in Mancuso established the storekeeper’s employee had looked at the doorway moments before the accident. The hazard there was so obvious a reasonably observant person must have seen it. Since the employee looked and did not see, the patron established the storekeeper’s negligence.
Here the evidence follows a similar pattern except that plaintiff failed to prove actual negligence. Plaintiff established her freedom from negligence and causation, but the trial court held storekeeper established he carried out more than adequate inspection procedures.
The testimony describing the display moments before the accident was by plaintiff’s daughter who testified she noticed disorder in the stack. This testimony was rejected. But even the daughter testified the danger was not apparent. When asked why she did not warn her mother, she testified she didn’t think it would fall.
We distinguish Kavlich. Here there is no evidence indicating an employee should have seen the hazard or that the hazard could have been visually detected. Therefore plaintiffs must show negligence. There is no manifest error in the trial court’s finding plaintiffs failed to carry this burden.
Although this is a close case, we fail to find manifest error in the trial court decision. The trial court judgment is affirmed, except insofar as it taxed trial court costs to defendants. Defendants timely answered the appeal seeking this amendment to the trial court judgment, and they are entitled to that relief. See MFA Mutual Insurance Company v. Fidelity & Casualty Company of New York, 318 So.2d 666 (La.App. 3 Cir. 1975). Court costs at trial and on appeal are assessed to plaintiffs.
Amended and affirmed.
WATSON, J., concurs in the result.